**PHOENIX INSURANCE COMPANY,**
Appellant,

v.

**ROSS JEWELERS, INC., Appellee.**

No. 21525.

United States Court of Appeals
Fifth Circuit.

June 29, 1966.

Rehearing Denied Aug. 4, 1966.

Thomas E. Twitty, Mobile, Ala., John M. Aherne, New York City, Bigham, Englar, Jones & Houston, New York City, Inge, Twitty & Duffy, Mobile, Ala., for appellant.

Irvin J. Langford, Thomas O. Howell, Jr., Thomas A. Johnston, III, Mobile, Ala., Howell, Johnston & Langford, Mobile, Ala., of counsel, for appellee.

Before WOODBURY,* JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge:

Ross Jewelers, the appellee, was engaged in the retail jewelry business at 12 N. Joachim Street in Mobile, Alabama. All of its capital stock was owned by Myron Ross Rubey, its president, and his wife. They also owned all of the capital stock of five other jewelry stores in other Alabama locations. Each store was owned by a separate corporation. Transfers of merchandise from store to store was a common practice. Ross Jewelers procured from Phoenix Insurance Company, the appellant, a policy of burglary insurance pursuant to a proposal in which Ross Jewelers represented that it kept a detailed stock record. It stated that it had an electrical burglar alarm system for the protection of the premises which it described as: "Allied Secret Service—Not an approved installation."

Ross Jewelers stated in the proposal that it maintained a vault with "No. 1 Door 1¾ inch steel key locked. Concrete Block 7½" thick. Wired to police station." The proposal was attached to and made a part of the policy. Included in the policy were conditions that:

"A. The Assured will maintain a detailed and itemized inventory of his or their property and separate listing of all travelers' stocks, in such manner that the exact amount of loss can be accurately determined therefrom by the [insuring] Company.

"B. The assured will maintain during the life of this policy, insofar as is within his or their control, watchmen and the protective devices described in his or their proposal form or in endorsements attached hereto."

There were, in fact, two separate alarm systems. One of these was the vault alarm system which had a wire running to an alarm at the police station. This system could be cut on or off by a lock-switch located behind one of the counters in the store, where it was not readily visible. The other alarm system, which was also wired to the police station, was intended to protect the store door. This door opened on the street and was the only means of access to the store. The switch-lock for turning this portion of the system on and off was located outside the door.

At the close of business on October 29, 1960, the store manager, Joseph Wank, turned on the switch to activate the vault alarm, leaving the key in the lock as was customary. Leaving the store he locked the door and turned on the switch to activate the door alarm system. He removed and took with him the door key and the key to the door alarm system. On the morning of the next day, Saturday, October 30, the discovery was made that burglars had entered by cutting through a partition wall separating the store from an adjoining beauty parlor. The vault had been broken into and ransacked. Jewelry was taken from the

---

* Senior Circuit Judge of the First Circuit, sitting by designation.

vault, from a display window, and from within the store. The vault alarm system had been turned off. Ross Jewelers filed a claim. Its accountant, James R. Lawrence, computed the loss at $71,408.16. General Adjustment Bureau, acting for Phoenix, employed another accountant, John G. Myers, who computed the loss at $65,993, which would have been substantially less if the figure had been reduced by the value of some of the stolen merchandise which had been recovered. Lawrence made an effort to reconcile his computation with that of Myers and in so doing made a slight downward revision of his estimate of the loss. In this computation there was an allowance for the value of the recovered jewelry. His revised figure was $69,921.04, and Ross Jewelers amended its ad damnum to reduce its claim to this amount.

A jewelry store in the Ross chain had been located in Anniston, Alabama. Inventory of a value of approximately $40,000 was sent to the Mobile store before the burglary. It had not been entered in the stock record or upon the Ross Jewelers inventory. Its value was reckoned by both Lawrence and Myers in their estimates of the loss.

Myers made his report to General Adjustment Bureau by a letter, with schedules attached, dated December 8, 1960. In the letter, among other things, Myers said:

"* * * the internal control over the stock, perpetual inventory records, inventories, memos and transfer slip was inadequate.

"* * * the detail stock records were not up to date at the time of the loss. * * * Transfers of the inventory of the Anniston, Alabama Store, * * * had not been recorded on the books. The amounts used in our computations were taken from what we were told were the physical inventory sheets of the Anniston store.

"Since a detailed and itemized inventory, currently maintained, was not kept, we had to have recourse * * * to the gross profit percentage method, rather than to actual book figures, in order to arrive at an estimate of the loss."

The Myers report was received in the Hartford, Connecticut, office of Phoenix on December 27, 1960. On January 3, 1961, Vincent J. Rogers, the Supervisor of the Inland Marine Claim Department of Phoenix, wrote to the Regional Manager of General Adjustment Bureau stating that Phoenix would be willing to adjust the loss by paying $10,328.07, representing the value of the merchandise stolen from the display window and store proper, but would not make payment for the contents of the vault because of the failure of Ross Jewelers to comply with the policy clause requiring a protective alarm system. Nothing in the letter mentioned the clause of the policy requiring the keeping of an inventory. General Adjustment Bureau made an offer to Ross Jewelers on behalf of Phoenix of $10,328.07, which was refused.

Ross Jewelers made a motion for summary judgment. Depositions were taken and filed. Affidavits were submitted and a number of documents were filed. A summary judgment was entered for Ross Jewelers and recovery was allowed for the amount claimed in the complaint as amended with some adjustments. Interest from January 11, 1961, the date on which Phoenix denied liability, to the date of the judgment was included. Phoenix, on appeal, contends that there were a number of genuine issues as to material facts which made erroneous the entry of a summary judgment. We pass over the claim that there was a genuine issue of fact as to whether there had been a burglary of the insured premises. The well established and uncontradicted facts could hardly admit of any other inference.

We are in agreement with the district court's holding that the denial of liability by Phoenix upon the sole ground that Ross Jewelers had breached the condition that it would maintain the protective devices, described in its proposal, operated as a waiver of the defense of the failure of Ross Jewelers to main-

tain an inventory. American Automobile Insurance Co. v. English, 266 Ala. 80, 94 So.2d 397; Pennsylvania Fire Insurance Co. v. Hughes, 5th Cir. 1901, 108 F. 497. Phoenix urges that the Myers report did not impart knowledge to it that the inventory had not been maintained. Phoenix says that the inventory point was submerged in a mass of auditor's figures and would emerge only after a close study. This statement seems untenable. In the paragraph of the report preceding the first tabulation of figures it is clearly stated that "a detailed and itemized inventory was not kept" and it was necessary to have recourse to the gross profit precentage method, rather than to actual book figures, in order to estimate the loss. Not only was the statement not submerged, but it was so clearly stated that it would have been apparent even upon a most cursory reading of the report. The Myers report was in the Hartford office of Phoenix on December 27, 1960. The letter denying liability only on the breach of the vault alarm protective device clause was written on January 3, 1961. Phoenix knew, when it declined liability for the loss of the jewelry taken from the vault, that inventory records were not being maintained. The writer of the Phoenix letter stated in an affidavit that he did not, at the time the letter was written, intend to waive the inventory defense. He did not say that he had not seen and read the Myers report, but merely that he had hastily prepared and mailed the letter and did not think of or consider the inventory question. While it may be said that waiver depends upon intention, the intention may be inferred from acts and conduct. Such inference is fully warranted under the facts here established.

The district court held that there was no breach of the policy by the leaving of the key in the lock of the switch because the alarm system was maintained in the same manner prior to the issuance of the policy as at the time of the loss, the system was unapproved and no reduction of premium was made by reason of it, and Phoenix had notice or knowledge as to how the system was maintained at the time it issued the policy. The proposal for the insurance was signed by the President of Ross Jewelers. It was stated in the proposal that it would constitute a warranty if a policy should be issued. The proposal showed that the system for the protection of the store premises was not an approved system, but the proposal did not disclose that the vault alarm system was not approved. In the affidavit of Myron Ross Rubey, President of Ross Jewelers, it is stated that it was customary to activate the vault alarm by turning the key and leaving the key in the lock switch. He related that B. F. Adams, of the agency which issued the policy for Phoenix, inspected the premises before the policy was issued. Rubey stated that

"At the time Mr. Adams inspected the insured premises immediately prior to the issuance of the policy the inside key was in the alarm box and I specifically remember showing Mr. Adams how this inside system was activated by turning the key off and on."

Joseph Wank, the store manager who closed up the evening before the burglary leaving the key in the switch, stated in his affidavit that:

"I also recall Mr. Rubey showing Mr. Adams how the inside system was activated and that at that time the key to the inside system was in the alarm box."

There was nothing before the district court showing that Adams was told, or that Phoenix was otherwise informed of the custom of leaving the key in the switch on leaving the premises unattended.

The provision of the policy that the assured would maintain the protective devices was a promissory warranty as well as a condition. Mutual Life Insurance Company of New York v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A.L.R. 649. There was an obligation upon Ross Jewelers to maintain the alarm system. The system was intended to function by activating it by the use of

the key in the switch-lock, and insuring its continued activation during the time while the store was unattended by the removal of the key. Only if the vault system was so operated can it be said that it was maintained within the meaning of the policy. The obligation of Ross Jewelers was not, as it contends, to operate the system as it had previously been operated. There was a breach of the condition of the policy requiring the maintenance of the vault alarm system. In the absence of estoppel or waiver, the breach of the condition will prevent recovery for the loss of the goods taken from the vault.

■ We do not think that the condition for the maintenance of the vault alarm system was vitiated by the fact that no reduction in premium was given although some decisions have indicated a different rule. It is enough to say, we think, that since Phoenix was not required to issue a policy under any circumstance, it could attach any lawful conditions that it saw fit.

■■ It is elementary that, in order for there to be a waiver of or an estoppel to assert a policy condition, there must be notice to the insurer or to an agent of the insurer who is authorized to waive. 29A Am.Jur. 191, Insurance § 1017. The showing here made is that an agent of Phoenix saw the switch-lock with the key in it. There is no showing that an agent of Phoenix was informed of the custom of leaving the key in the switch so that a burglar could, upon gaining entry into the premises, deactivate the vault alarm system and render it ineffective. The conclusion is here reached that there can be no recovery under the policy for the loss by burglary of the goods in the vault.

Phoenix has raised other questions on the appeal. It contends that there was a fact issue with respect to the value of the goods taken. It also urges that it is not shown that the goods received from the Ross store in Anniston were within the coverage of the policy. While we regard the contentions of Phoenix as to these questions as being highly plausible, the disposition made of the appeal does not require that they be decided.

Ross Jewelers is entitled to recover upon the policy for the merchandise stolen from the show window and elsewhere in the store, except that which was taken from the vault. The cause will be remanded for a determination of the extent of the loss for which Phoenix is liable. Costs on appeal will be taxed to Ross Jewelers. The costs in the district court will be assessed by that court. The judgment of the district court is

Reversed and remanded.