**NATIONWIDE MUTUAL INSURANCE CO., Plaintiff**

v.

**Bruce MORTENSEN et al., Defendants**

**No. CIV.A.3:00–CV–1180 D.**

United States District Court, D. Connecticut.

Sept. 24, 2002.

---

Michael Feldman, Feldman & Hickey, LLC, Farmington, CT, for Plaintiff.

Edward F. Hennessey, Frank F. Coulom, Jr., Brien P. Horan, Maria T. Ackley, Robinson & Cole, Hartford, CT, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, Nationwide Mutual Insurance Company ("Nationwide"), filed this action seeking, *inter alia*, a declaratory judgment as to whether commercial liability policies it has issued to the defendants, former insurance agents for Nationwide and its affiliated companies, require it to defend lawsuits it has brought against those same defendants.[1] The defendants have filed a counterclaim setting forth breach of contract, fiduciary duty, and duty of good faith and fair dealing claims.

The plaintiff has filed a motion for summary judgment [Document # 62], which the defendants oppose.

## I. Facts[2]

The defendants, Bruce Mortensen, David H. Donaldson, Patricia Bland, James Warner, Sr., James L. Birarelli, Bonnie Johnson, Johnson Agency Inc., Robert York, and John Marcucilli are former insurance agents for Nationwide and its affiliated companies.[3] Each of the former agents was also insured by Nationwide under a "Business Provider Insurance Policy." After the agents' termination by Nationwide, Nationwide brought suit against the agents [hereinafter "Liability Lawsuits"][4] alleging that they improperly retained Nationwide's proprietary information (including trade secrets, pricing information, policy holder information and files, marketing information and product information); violated the agency and other agreements; unlawfully transmitted confidential information to Nationwide's competitors; improperly switched policyholders to other companies; wrongfully accepted appointments as insurance sales agents by other companies prior to the termination of their Nationwide agency; and committed computer crimes.

The agents have requested that Nationwide defend them in the Liability Lawsuits under the business provider insurance pol-

---

1. The parties do not dispute the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) or that Connecticut law applies.

2. The following facts are taken from the parties' Local Rule 9(c) statements, summary judgment papers, and exhibits attached thereto. They are undisputed unless otherwise indicated.

3. James L. Birarelli, Inc. is also named as a defendant in the instant action. However, in Nationwide's memorandum in support of its motion for summary judgment, Nationwide concedes that James L. Birarelli, Inc. was incorporated on January 31, 2000, was not a Nationwide insurance agent, and was not insured under a Nationwide policy.

4. Those suits are: *Nationwide Mutual Insurance Company, et al. v. Bruce J. Mortensen*, 3:99CV2007 (RNC); *Nationwide Mutual Insurance Company, et al. v. David H. Donaldson*, 3:99CV2006 (RNC); *Nationwide Mutual Insurance Company, et al. v. Patricia Bland*, 3:99CV2005 (RNC); *Nationwide Mutual Insurance Company, et al. v. John Marcucilli, James Birarelli, James W. Warner, Sr., Marcucilli Agency, Inc., James L. Birarelli, Inc. and Moraine Group, Inc.*, 3:00CV870 (RNC); *Nationwide Mutual Insurance Company, et al. v. Johnson Agency, Inc. and Bonnie Johnson*, 3:00CV0619 (RNC); and *Nationwide Mutual Insurance Company, et al. v. Robert York and the York Agency, Inc.*, CV-00-0092334-3 (Conn.Sup.Ct.).

icies issued to them by Nationwide. Nationwide seeks in the instant complaint a declaratory judgment that the agents are not entitled to coverage or the costs of defense for the Liability Lawsuits and seeks to recoup attorneys' fees already incurred.

Nationwide contends the alleged causes of action in its Liability Lawsuits are not covered by the policies and has moved for summary judgment on that basis. The defendants contend that genuine issues of material fact exist as to whether the claims are covered and whether Nationwide's actions with regard to the Liability Lawsuit complaints estop it from denying such coverage.

## II. Summary Judgment Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....' " *Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery,

if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

## III. Nationwide's Motion for Summary Judgment

In the instant complaint,[5] Nationwide separates its allegations concerning the Liability Lawsuits into two counts, based on the defendants in those suits. In the third count, Nationwide seeks damages for defense costs already paid. The Liability Lawsuit complaints against Mortensen, Donaldson, and Bland are referenced in Count One of the instant complaint. The original Liability Lawsuit complaints against Mortensen, Donaldson, and Bland, filed in October 1999, contained allegations of breach of the duty of loyalty; breach of contract; conversion; civil theft under Conn. Gen.Stat. § 52–564; breach of fiduciary duty; violations of the Connecticut Unfair Trade Practices Act and unfair competition; interference with contract

---

**5.** Nationwide filed its original complaint in this case on June 26, 2000. It filed an "Amended Complaint" on July 21, 2000 and filed a motion to amend that complaint on August 25, 2000. The motion to amend was granted and a "Second Amended Complaint," dated August 25, 2000, was filed on October 2, 2000. The "Second Amended Complaint" is the operative complaint. It appears that the defendants' answer, affirmative defenses, and counterclaim of August 14, 2000 are the operative responses.

rights and other business relations; interference with business expectancies; and unjust enrichment. Those complaints were amended in November 1999 (the "November 1999 *Mortensen, Donaldson,* and *Bland* complaints") to add allegations of trademark infringement. On August 17, 2000, the complaints were again amended, consolidated into one complaint (the "Consolidated Amended *Bland* Complaint"), and the trademark infringement claims and other "references to advertising" were deleted.[6]

The Liability Lawsuit complaints against Warner, Birarelli, James Birarelli, Inc., Johnson, Johnson Agency, Inc., Marcucilli, and York, (the "*Warner* complaints") are referenced in Count Two of the instant complaint.[7] Those suits allege the following causes of action: breach of the duty of loyalty; breach of contract; conversion; civil theft under Conn. Gen.Stat. § 52–564; breach of fiduciary duty; violations of the Connecticut Uniform Trade Secrets Act; violations of the Connecticut Unfair Trade Practices Act and unfair competition; interference with contract rights and other business relations; interference with business expectancies; computer crimes in violation of Conn. Gen.Stat. § 53a–251; and unjust enrichment.

Nationwide asserts that the Liability Lawsuit complaints referenced in Counts One and Two do not allege injury or claims covered by the business provider insurance policies issued to the defendants by Na-

tionwide. Specifically, Nationwide maintains that the Liability Lawsuit complaints do not allege "personal injury" or "advertising injury" as defined by the policies, and alternatively, that they are excluded from coverage under the policies pursuant to certain policy exclusions.[8]

The defendants contend that the pre-amendment Liability Lawsuit complaints, the current Liability Lawsuit complaints, and the surrounding facts and circumstances reveal genuine issues of material fact as to whether the Liability Lawsuits allege claims that are covered. The defendants also argue that genuine issues of material fact exist as to whether Nationwide breached its promise to provide a defense to the Liability Lawsuits in its "reservation of rights" letters and breached its fiduciary and good faith and fair dealing duties by choosing not to bring certain claims and deleting other claims in an attempt to eliminate its duty to defend, and that such breaches give rise to a duty to defend, notwithstanding whether the Liability Lawsuit complaints allege covered claims. The defendants also argue that such genuine issues of material fact preclude summary judgment as to their counterclaim for damages.

The following discussion first sets forth the pertinent policy provisions, analyzes whether evidence outside the allegations of the Liability Lawsuit complaints should be considered in determining the duty to de-

---

**6.** The Consolidated Amended *Bland* Complaint is dated July 11, 2000. That complaint also added counts alleging violations of the Connecticut Uniform Trade Secrets Act and computer crimes.

**7.** The Liability Lawsuits mentioned in this count are: *Nationwide Mutual Insurance Company, et al. v. John Marcucilli, James Birarelli, James W. Warner, Sr., Marcucilli Agency, Inc., James L. Birarelli, Inc., and Moraine Group, Inc.,* 3:00CV870 (RNC); *Nationwide Mutual Insurance Company, et al. v. Johnson*

*Agency, Inc. and Bonnie Johnson,* 3:00CV0619 (RNC); and *Nationwide Mutual Insurance Company, et al. v. Robert York and York Agency, Inc.,* CV–00–0092334–3 (Conn.Sup.Ct). However, Marcucilli Agency, Inc., Moraine Group, Inc., and York Agency, Inc., are not named as defendants in the instant action.

**8.** Nationwide also asserts that the Liability Lawsuits do not allege "bodily injury" or "property damage" as defined by the policies. The defendants do not appear to contest this assertion.

fend, resolves which Liability Lawsuit complaints should be reviewed, and then decides the duty to defend issues. Following that discussion, this opinion will address other coverage issues, damages questions, and the counterclaim.

## A. The Insurance Policy Provisions [9]

The "Business Liability" provisions in the Nationwide insurance policies provide, in pertinent part:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

. . . . .

b. This insurance applies: ... (2) To (a) "Personal injury" caused by an offense arising out of your business, excluding, advertising, publishing, broadcasting, or telecasting done by or for you; (b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services ....

The definitions section provides, in relevant part:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

. . . . .

10. "Personal Injury" means injury, other than "bodily injury," arising out of

. . .

d. Oral or Written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, product or services.

The exclusions section provides, in relevant part:

This insurance does not apply to: ...

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description or mistake in the advertised price of goods, products or services;

(4) Patent infringement or securities fraud; or

(5) An offense committed by an insured whose business is advertising, publishing or telecasting.

## B. Duty to Defend Standard and the "Four Corners" Rule

■ "[A]n insurer's duty to defend [is] much broader in scope and application than its duty to indemnify .... The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has,

---

**9.** Each "Business Provider Insurance Policy" held by the defendants contains the same language set forth in the text.

in his complaint, stated facts which bring the injury within the coverage." *Springdale Donuts, Inc. v. Aetna Cas. and Sur. Co.*, 247 Conn. 801, 724 A.2d 1117, 1120 (1999) (internal quotation marks and citations omitted). The Second Circuit recently discussed an insurer's duty to defend under Connecticut law:

> The duty to defend does not hinge on the skill or manner in which a complaint is drafted, but rests on the substantive thrust of the complaint, and the surrounding facts. *See Qsp, Inc. v. Aetna Casualty and Surety Co.*, 256 Conn. 343, 376, 773 A.2d 906 (2001); *Schwartz v. Stevenson*, 37 Conn.App. 581, 585, 657 A.2d 244 (1995) (noting that the duty to defend depends on whether the complaint "stated facts which *appeared* to bring [the plaintiff's] claimed injury within the policy coverage") (emphasis in original). "[I]f an allegation of a complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Imperial Casualty and Indemnity Co. v. State*, 246 Conn. 313, 324, 714 A.2d 1230 (1998) (emphasis in original).

*R.C. Bigelow v. Liberty Mutual Ins. Co.*, 287 F.3d 242, 245 (2d Cir.2002).

■ In determining the scope of coverage under a policy, Connecticut law provides that:

> The interpretation of an insurance policy ... involves a determination of the intent of the parties as expressed by the language of the policy ... [including] what coverage the ... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy.... [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy.... The policy words must be accorded their natural and ordinary meaning ... [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.

*Springdale Donuts*, 724 A.2d at 1119–20 (internal quotation marks and citations omitted); *see also Qsp, Inc. v. Aetna Casualty and Surety Co.*, 256 Conn. 343, 773 A.2d 906, 927 (2001) (citing "broad interpretation" standards in construing insurance policies).

■ "The existence of a duty to defend is determined on the basis of what is found within the four corners of the complaint; it is 'not affected by facts disclosed by independent investigation, including those that undermine or contradict the injured party's claim."' *See, e.g., Stamford Wallpaper Co., Inc. v. TIG Ins. Co.*, 138 F.3d 75, 79 (2d Cir.1998) (applying Connecticut law) (citing *Cole v. East Hartford Estates Ltd. Partnership*, No. CV 950547179S, 1996 WL 292135, at *2 (Conn.Super. May 15, 1996)). However, in certain circumstances, a court may "consider known or discoverable facts and other extrinsic evidence in determining whether the insurer has a duty to defend." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 200:22 (3d ed.1999). This exception to the "four corners" rule is applied when the allegations of a complaint indicate a lack of coverage, but the insurer possesses extrinsic information, obtained through its own investigation, that the claims are in fact covered. *See, e.g., Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1377 (11th Cir. 1998) (citing *Loftin v. United States Fire Ins. Co.*, 106 Ga.App. 287, 127 S.E.2d 53, 59 (1962)); *Piper Jaffray Cos., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F.Supp. 1148, 1159–60 (D.Minn. 1997); *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90, 93–94 (1991).

The defendants maintain that this exception should be expanded to recognize a duty to defend here.

Generally, however, where the allegations of the plaintiff's complaint indicate a lack of coverage, but the insurer has extrinsic information that indicates coverage, the dispute involves three separate parties: plaintiff, defendant/insured, and insurer. In such a circumstance, as mentioned, the extrinsic information possessed by the insurer may give rise to a duty to defend, notwithstanding the absence of allegations indicating coverage. The reasoning appears to be that the suit could still result in a covered loss, and it would violate the contractual duties of the insurer to allow the suit to proceed without providing a defense to the insured when that potential exists. *See, e.g., Loftin,* 106 Ga.App. at 296, 127 S.E.2d 53 ("It would not be reasonable to say that it was the intention of the contracting parties, when the insured has given all notice and information required of him, that the assertions of a third party, a stranger to the contract, rather than the true facts, be allowed to determine the rights between the contracting parties . . . ."). Here, Nationwide is both the insurer of the defendants and the plaintiff in the Liability Lawsuits. Unlike the usual situation, there is no risk that the Liability Lawsuits will ultimately result in covered claims, because Nationwide itself controls whether the Liability Lawsuits complaints allege facts which would bring its claims within coverage. Thus, unlike in the typical three-party situation, it is of no moment whether Nationwide may know of facts that may give rise to causes of action against the insured that are not alleged in the complaint; as the master of its complaint, Nationwide has chosen not to allege covered claims.[10] Ac-

cordingly, the defendants have not demonstrated that Nationwide's possession of extrinsic information regarding the Liability Lawsuit complaints should create a duty to defend. Nor have the defendants demonstrated the existence of any other circumstances that would invoke an exception to the "four corners" rule. Therefore, the Court finds that it need not consider evidence outside the "four corners" of the complaint in order to determine Nationwide's duty to defend.

### C. Version of the Complaints to be Analyzed

 "Jurisdictions differ with regard to which version of a complaint should be considered in determining an insurer's duty to defend." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 200:21 (3d ed.1999). Some courts have held that a court must refer only to the latest amended pleadings in determining the insurer's duty to defend, *see John Deere Ins. Co. v. Truckin' U.S.A.,* 122 F.3d 270, 273 n. 1 (5th Cir.1997), while others have held that an insurer's duty to defend is set by the allegations contained in an initial pleading and that duty is not extinguished by later filings tending to indicate that claims against insured are not covered by the policy, *see Kings Point West, Inc. v. North River Ins. Co.,* 412 So.2d 379 (Fla. App. 2d Dist.1982). While neither Connecticut state courts nor the Second Circuit have spoken on this issue, the Court follows the holding of the Fifth Circuit in *John Deere* and will consider only the latest filed Liability Lawsuit complaints in order to determine Nationwide's duty to defend. *See, e.g., Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983) ("[T]he duty to defend is determined by

---

10. *See* discussion *infra* Section III.D. However, Nationwide may have certain fiduciary and good faith duties with regard to its ac-

tions. The Court will examine those issues later in the opinion in the context of the counterclaim for damages.

examining the latest, and only the latest, amended pleadings."); *U.S. Fire Ins. Co. v. Deering Mgmt. Group, Inc.*, 946 F.Supp. 1271, 1282 (N.D.Tex.1996); *Clarendon Am. Ins. Co. v. Bay, Inc.*, 10 F.Supp.2d 736, 740 (S.D.Tex.1998). As the Fifth Circuit stated in *Rhodes:*

> A complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty. Likewise, a complaint which does allege a cause of action under the policy so as to create a duty to defend may be amended so as to terminate the duty. In the first instance, the insurer may properly refuse to defend before the amended complaint is filed, and in the second, the insurer may properly withdraw after the amendment is made.

*Rhodes*, 719 F.2d at 119. While the reasoning behind considering only the latest filed pleading is not clearly set forth in these opinions, this Court concludes that the rationale lies in the fundamental nature of an insurance policy as a contract. *See Pacific Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 688 A.2d 319, 321 (Conn.1997) ("An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . ."). Where a complaint contains covered claims, the insurer is under a contractual duty to provide a defense. When those claims are dropped, the contractual duty also expires, and the insurer is no longer obligated to provide a defense. *See, e.g., Springdale Donuts*, 724 A.2d at 1119–20 ("The obligation of the insurer to defend . . . [depends] on whether [the plaintiff] has, in his complaint, stated facts

which bring the injury within the coverage . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend . . . On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend."). Thus, while the defendants argue that the October 1999 *Mortensen, Donaldson,* and *Bland* complaints' allegations regarding the agents' misuse of and failure to return Nationwide's national advertising guide, the use of the Nationwide name and logo, and the November 1999 *Mortensen, Donaldson,* and *Bland* complaints' allegations regarding the use of Nationwide's trademark, service marks, or trade dress constitute allegations of "advertising injury" under the policy, the Court will consider only whether the latest filed Liability Lawsuit complaints allege injury covered by the policy.[11]

### D. Duty to Defend Based on Allegations of Liability Lawsuit Complaints

#### 1. Coverage Under "Advertising Injury" Provisions

The Connecticut Supreme Court has defined "advertise" as "to announce publicly esp[ecially] by a printed notice or a broadcast; [and] to call public attention to esp[ecially] by emphasizing desirable qualities so as to arouse a desire to buy or patronize." *Qsp*, 773 A.2d at 921 (quoting *Schwartz v. Planning and Zoning Comm'n*, 208 Conn. 146, 543 A.2d 1339, 1345 (1988)) (alterations in original). In

---

**11.** Specifically, the Court will consider the "Consolidated Amended *Bland* Complaint," dated July 11, 2000 and filed on August 17, 2000, the original complaint against Marcucilli, Birarelli, Warner, and James L. Birarelli, Inc., dated May 11, 2000 and filed on May 12, 2000, the amended complaint against Johnson and Johnson Agency, Inc., dated August 18, 2000 and filed on September 22, 2000, and the original complaint against York, dated and filed on June 2, 2000.

order to be considered advertising under Connecticut law, "information must be publicly or widely disseminated." *Id.* at 922. Connecticut courts have defined "advertising injury" to include "slander, libel, right of privacy, advertising ideas, style of doing business, and copyright." *See Julian v. Liberty Mutual Ins. Co.*, 43 Conn. App. 281, 682 A.2d 611, 615 (1996) (internal quotations omitted). Additionally, the advertising offense must have been "caused by an offense committed in the course of advertising the [insured's] goods." *Id.* at 615–16 (internal quotation marks omitted); *Nationwide Mutual Ins. Co. v. Bartlett*, No. CV–00–0434510S, 2000 WL 767878 (Conn.Super.Ct. May 23, 2000).

### a. *Warner* Complaints

The defendants have admitted in their answer that the *Warner* complaints do not allege "advertising injury" that occurred in the course of advertising. *See Answer, Affirmative Defenses and Counterclaim,* August 14, 2000, Count Two at ¶ 6.

### b. Consolidated Amended *Bland* Complaint

The Consolidated Amended *Bland* Complaint, assert the defendants, sets forth covered allegations despite Nationwide's amendments which deleted claims and references to advertising. For example, argue the defendants, in paragraph 97 of the Consolidated Amended *Bland* Complaint, Nationwide still alleges that Mortensen committed "other improper acts." In the November 1999 *Mortensen* complaint, the defendants argue, this reference was to Mortensen's "use of communication lines advertised by the use of Nationwide's logo and name." The defendants assert that these "other acts" may still include the "advertising" activities that were originally alleged. As well, the defendants maintain, paragraph 36 of the Consolidated Amended *Bland* Complaint mentions Donaldson's use of checks proclaiming his status as "DBA A 'Nationwide Insurance Agent,'" which can be construed as an allegation of "advertising injury," and Exhibit 2 to the Consolidated Amended *Bland* Complaint, which mentions the defendants' use of the slogan "Nationwide is on your side," is also an allegation of "advertising injury." [12] Additionally, assert the defendants, the Consolidated Amended *Bland* Complaint's references to misappropriation of trade secrets and confidential information related to marketing and sales can also constitute allegations of "advertising injury." Accordingly, the defendants argue, though the word "advertising" is not found in the Consolidated Amended *Bland* Complaint, the complaint contains allegations covered by the "advertising injury" provision.

The Court concludes, however, that these allegations of the Consolidated Amended *Bland* Complaint do not state claims covered by the "advertising injury" provision, as a matter of law.

First, paragraph 97 of the Consolidated Amended *Bland* Complaint, where Nationwide alleges that Mortensen committed "other improper acts," and Exhibit 2 to the Consolidated Amended *Bland* Complaint, mentioning the defendants' use of the slogan "Nationwide is on your side," do not rise to the level of *allegations* of advertising injury. Notwithstanding the language in prior ver-

---

**12.** The defendants also maintain that, in a "reservation of rights" letter issued to Bland on May 4, 2000 regarding the Consolidated Amended *Bland* Complaint, Nationwide stated that "the conduct alleged in the Lawsuit includes ... infringement ... in connection with 'the advertising, promotion, offering and sales of insurance and financial services.'" However, as the Court has concluded that it may not consider extrinsic evidence in determining Nationwide's duty to defend, it does not consider this letter as evidence of the duty to defend.

sions of the Consolidated Amended *Bland* Complaint which pre-dated the "other improper acts" language, the Court finds no support for the defendants' argument that the present allegation of "other improper acts" constitutes an allegation of "advertising injury." As to Exhibit 2, the Court finds that the mere reference to such advertising activity in an exhibit does not state a claim of "advertising injury." *See Heil Co. v. Hartford Accident and Indemnity Co.*, 937 F.Supp. 1355, 1366 (E.D.Wis. 1996).

Additionally, paragraph 36 of the Consolidated Amended *Bland* Complaint, mentioning Donaldson's use of checks proclaiming his status as "DBA A 'Nationwide Insurance Agent,'" is not an allegation of "infringement of title" under the definition of "advertising injury" of the policy. "Title" in the "advertising injury" provision does not refer to the title of a company, or a service mark, but rather refers to "'a distinctive name or designation used to identify a literary or artistic work.'" *Julian*, 682 A.2d at 614 (quoting *Atlantic Mutual Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 429 (E.D.Pa.1994)); *see also ShoLodge, Inc. v. Travelers Indem. Co. of Illinois*, 168 F.3d 256, 259 (6th Cir.1999) ("In ordinary use, the word 'title' generally refers to the non-copyrightable title of a book, film, or other literary or artistic work.").

The defendants have also failed to establish that these portions of the complaint and related materials constitute allegations of trademark or trade dress infringement. Moreover, even assuming the Liability Lawsuits did allege trademark or trade dress infringement, courts have construed policies similar to those issued by Nationwide to place claims involving trademark or trade dress infringement outside the scope of "advertising injury" when "advertising injury" is defined as "misappropriation of advertising ideas or style of

doing business." In *Advance Watch Co., Ltd. v. Kemper Nat'l Ins., Co.*, 99 F.3d 795 (6th Cir.1996), for example, a holder of a business liability insurance policy was sued for trademark infringement under the Lanham Act for the sale of writing instruments which were alleged to have been reproductions, counterfeits, and imitations of the injured party's products and were depicted in a catalog. The Sixth Circuit held that the policyholder was not entitled to a defense under the policy because the allegations of trademark infringement could not be reasonably construed as a "misappropriation of advertising ideas or style of doing business," defined as "advertising injury" under the relevant policy. The Sixth Circuit stated that the tort of misappropriation protects distinct legal interests from those which are the subject of trademark and copyright protection, and therefore, the causes of action for "misappropriation of advertising ideas or style of doing business" does not necessarily subsume Lanham Act claims.

In *Bigelow*, the Second Circuit considered whether claims of trade dress infringement constituted "advertising injury" under a business insurance policy. There, the insured contended that the injured party's claims of trade dress infringement fell within the scope of the insurance policy's advertising provision because the allegedly infringing trade dress was depicted in the insured's published advertisements. Citing *Advance Watch* approvingly, but distinguishing it from the facts in *Bigelow*, the Second Circuit stated:

> In *Advance Watch*, the policy covered "misappropriation" of advertising ideas or style, and the Court reasoned that "misappropriation" has long existed "as a definite tort," *id.* at 802, and that the phrase "misappropriation of advertising ideas or style ... refer[s] to a category of actionable conduct separate from trademark and trade dress in-

fringement," *id.* In the pending case, however, the policy defines "advertising injury" to include the "[c]opying" of advertising ideas or style. The term "copying" does not suggest a traditional tort that can so readily be considered distinct from trademark or trade dress infringement.

*Bigelow*, 287 F.3d at 247. Here, the policy defines "advertising injury" to include the "misappropriation" of advertising ideas or business style, rather than the "copying" of advertising ideas or business style. Thus, even assuming the allegations of the Consolidated Amended *Bland* Complaint did state trade dress or trademark infringement claims, the Court concludes that, as in *Advance Watch*, such allegations are distinct from the tort of "misappropriation of advertising ideas or style of doing business." [13]

■ Additionally, the Court finds that the Consolidated Amended *Bland* Complaint's allegations that the defendants misappropriated Nationwide's trade secrets, pricing structure information, policyholder information, marketing information, product information, and/or other proprietary information, as a matter of law, do not constitute claims of "advertising injury" committed in the course of advertising. The defendants cite *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.*, 93 F.3d 578, 581 (9th Cir.1996), for the proposition that claims of "misappropriation of trade secrets related to marketing and sales" raise the potential for liability under the offense of "misappropriation of advertising ideas." However, in *Sentex*, the insurer did not dispute that the injuries relating to the insureds' misappropriation of trade secrets were caused by advertising activities. *See Sentex*, 93 F.3d at 580 ("In this case, the district court held that Sentex was engaged in 'advertising activities' and that ESSI's alleged injuries were caused by these activities. These rulings are not challenged on appeal.") (internal citations omitted). The insurer in *Sentex* claimed that "misappropriation of advertising ideas" referred only to the misappropriation of actual advertising text, and the Ninth Circuit disagreed, holding that the misappropriation of "knowledge, information and trade secrets, including customer lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information" for advertising purposes did constitute the "misappropriation of advertising ideas." *Id.* (internal quotation marks omitted).

■ Here, the defendants have not created a genuine issue of material fact that their misappropriation of Nationwide's trade secrets, pricing structure information, policyholder information, marketing information, product information, and/or other proprietary information arose out of the defendants' advertising. *Cf. Sentex*, 93 F.3d at 580. Under Connecticut law, "advertising injury" coverage requires "that the underlying action allege not only the offense itself, but also that it arose out of the insured's advertising activities." *Qsp*, 773 A.2d at 923, 925–26 n. 26. The advertising must " '*contribute materially* to the injury.' " *Bigelow*, 287 F.3d at 248 (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 750 n. 8 (3d Cir.1999)). The Court finds that the defendants have not pointed to allegations that advertising contributed to the alleged misappropriation of Nationwide's trade secrets, pricing structure information, policy-

---

**13.** Thus, the Court need not reach the issue of whether such injury "arose out of the insured's advertising activities." *Qsp*, 773 A.2d at 923, 925–26 n. 26; *see also Bigelow*, 287 F.3d at 247–48 (discussing the requirement that advertising contribute to the trademark or trade dress infringement).

holder information, marketing information, product information, and/or other proprietary information.

### 2. Coverage Under Other Policy Provisions

▇ The defendants also appear to argue that the Liability Lawsuit complaints allege "personal injury" under the policy. *See* Defs. Mem. Opp. Mtn. Summ. J. at 15. As noted above, the policies define "personal injury" as "Oral or Written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, product or services." The defendants maintain that Nationwide's allegations that the defendants caused damage to Nationwide's business reputation constitute allegations that the defendants' actions disparaged Nationwide's goods, products or services. However, to the extent the Liability Lawsuit complaints do allege damage to business reputation, a claim for harm to reputation does not, by itself, constitute a claim for libel, slander, or disparagement. *See United Nat'l Ins. Co. v. SST Fitness Corp.,* 182 F.3d 447, 452 (6th Cir.1999) (holding that "allegations of injury to ... name, business reputation and good will" did not constitute "personal injury" because they did not constitute libel, slander, or disparagement); *Wake Stone Corp. v. Aetna Cas. & Sur. Corp.,* 995 F.Supp. 612, 615 (E.D.N.C.1998) (unfair trade practices claim did not constitute libel, slander, or disparagement). Thus, the defendants have not created a genuine issue of material fact as to whether any of the claims alleged in the Liability Lawsuit complaints constitute allegations of "personal injury."

### E. Duty to Defend Based on Breach of "Temporary" Duty to Defend

▇ The defendants also argue that Nationwide had a "temporary" duty to defend the Liability Lawsuits while this case was pending, notwithstanding whether this

Court ultimately determined that Nationwide did not have a duty to defend the Liability Lawsuits, and that its breach of such "temporary" duty to defend estops it from denying coverage. In *Hugo Boss Fashions, Inc. v. Federal Insurance Co.,* 252 F.3d 608, 620 (2d Cir.2001), the Second Circuit held that, where there is uncertainty as to coverage, New York state law requires an insurer to defend a suit against its insured "until it is determined *with certainty* that the policy does not provide coverage." Connecticut law may also provide for this "temporary" duty to defend. *See, e.g., West Haven v. Commercial Union Ins. Co.,* 894 F.2d 540, 544 (2d Cir.1990) (applying Connecticut law) ("The general rule is [that] if an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured."); *Keithan v. Massachusetts Bonding and Ins. Co.,* 159 Conn. 128, 267 A.2d 660, 665–66 (1970) ("Where a complaint in an action ... states a cause of action against the insured which appears to bring the claimed injury within the policy coverage, it is the contractual duty of the insurer to defend the insured in that action ....").

In light of the legal uncertainty surrounding coverage of the Liability Lawsuits, the defendants argue, Nationwide was obligated to provide a defense to the defendants until the declaratory judgment action was resolved. *See Hugo Boss,* 252 F.3d at 622 (finding legal uncertainty as to whether claim alleged "advertising injury" and holding that "[i]t was, therefore, incumbent upon Federal to undertake a defense of Hugo Boss until the uncertainty surrounding the term was resolved."). The defendants maintain that Nationwide did not provide such a defense.

However, without determining whether Nationwide breached a "temporary" duty

to defend,[14] the Court concludes that this alleged breach would not give rise to a continuing duty to defend uncovered claims, but rather, may now only present a cause of action for damages. *Hugo Boss* does not suggest that a breach of the "temporary" duty to defend permanently estops the insurer from denying coverage or creates a further duty to defend an uncovered claim. *Hugo Boss* emphasized that this "temporary" duty to defend ends once a declaratory judgment resolves the issue of coverage. *See id.* at 622. Thus, while it may give rise to a cause of action for damages, Nationwide's alleged breach of its "temporary" duty to defend does not give rise to a present duty to defend the Liability Lawsuit complaints.

### F. Duty to Defend Based on Breach of Promise in "Reservation of Rights" Letters, Breach of Fiduciary Duty, Duty of Good Faith and Fair Dealing

 The defendants also maintain that Nationwide's duty to defend arises from (1) Nationwide's failure to pay defense costs and thus breach of its promise to defend the cases in its "reservation of rights" letters and (2) Nationwide's breach of its fiduciary duty and duty of good faith and fair dealing by choosing which claims to assert against each defendant in an attempt to avoid its contractual duties of coverage and by amending its Liability Lawsuit complaints to drop certain covered claims. As a result of its breach of such duties, the defendants argue, Nationwide is estopped from denying insurance coverage to the defendants on the claims alleged in the Liability Lawsuits.

Without determining the extent of Nationwide's duties and whether Nationwide

breached those duties,[15] the Court finds that, as above, these alleged breaches do not give rise to a duty to defend, but rather, may present causes of action for damages. Although estoppel has been recognized in very limited circumstances to preclude denial of a duty to defend, the circumstances here do not warrant its application. *See, e.g., Heyman Assocs. No. 1 v. Insurance Co. of State of Pennsylvania,* 231 Conn. 756, 653 A.2d 122, 134 (1995) (estoppel may prevent an insurer from denying coverage in certain circumstances); *Val Drugs, Inc. v. Lynn,* 402 F.Supp. 174, 177 (W.D.N.Y.1975); *Linemaster Switch Corp. v. Aetna Life & Cas. Corp.,* No. CV91–0396432S, 1995 WL 462270, at (Conn.Super.Ct. July 25, 1995).

### G. Conclusion

In sum, the Court finds, as a matter of law, that the Liability Lawsuit complaints do not create a duty to defend. The Court also finds that Nationwide's alleged breaches of its "temporary" duty to defend, its promise to defend in the "reservation of rights" letters, its fiduciary duty, or its duty of good faith and fair dealing do not, as a matter of law, create a duty to defend the Liability Lawsuit complaints. Thus, Nationwide's motion for summary judgment is GRANTED, IN PART, and a declaratory judgment shall issue that Nationwide is not obligated to defend the Liability Lawsuits referenced in Count One or Two of the instant complaint.

The Court will next address the defendants' counterclaim and Nationwide's request for damages in Count Three of its complaint.

---

**14.** The Court will examine whether the defendants have created a genuine issue of material fact as to Nationwide's alleged breach of such duty in Section IV, *infra.*

**15.** The Court will examine whether the defendants have created a genuine issue of material fact as to Nationwide's alleged breach of those duties in Section IV, *infra.*

## IV. Defendants' Counterclaim

First, the Court will address whether genuine issues of material fact exist as to the defendants' counterclaim for damages.

### A. Damages Claims for Breach of "Temporary" Duty to Defend

■■■■ As noted above, the defendants argue that Nationwide breached its "temporary" duty to defend the Liability Lawsuits while this case was pending. *See Hugo Boss*, 252 F.3d at 620. However, unlike the insurer in *Hugo Boss*, Nationwide claims that it provided a defense to the defendants while it brought a declaratory judgment seeking a determination as to its duty to defend. Thus, Nationwide argues, it has satisfied its "temporary" duty to defend. The Court finds, however, that the defendants have created a genuine issue of material fact as to whether Nationwide indeed provided a defense during the pendency of the coverage determination. Accordingly, the Court declines to find that, as a matter of law, Nationwide has satisfied that duty, or the duty of good faith that comes with that duty, *see id.* at 624 (stating that an insurer who has a duty to defend may breach a duty of good faith by refusing to defend until scope of coverage was determined).[16]

### B. Damages Claims for Breach of Promise in "Reservation of Rights" Letters, Breach of Fiduciary Duty, Duty of Good Faith and Fair Dealing

The defendants' counterclaim also sets forth damages claims for (1) Nationwide's failure to pay defense costs and thus breach of its promise to defend the cases in its "reservation of rights" letters and (2) Nationwide's breach of its fiduciary duty and duty of good faith and fair dealing by choosing which claims to assert against each defendant in an attempt to avoid its contractual duties of coverage and by amending its Liability Lawsuit complaints to drop certain covered claims.

In light of the genuine issue of material fact as to whether Nationwide provided a defense during the pendency of the coverage determination, the Court also declines to grant summary judgment on the defendants' claim that Nationwide breached its promise to defend the Liability Lawsuits in the "reservation of rights" letters.[17]

■■■■ The Court also finds that genuine issues of material fact exist as to whether Nationwide breached its fiduciary duty and duty of good faith and fair dealing by allegedly choosing which claims to assert against each defendant in an attempt to avoid its contractual duties of coverage and by amending its Liability Lawsuit complaints to drop certain covered claims. *Cf. Lockwood International v. Volm Bag Co., Inc.*, 273 F.3d 741, 744 (7th Cir.2001) (finding that insurer breached duty of good faith by settling claims covered by insured's policy and, in effect, "paying its insured's adversary to eliminate the insured's remaining insurance coverage"). Thus, the Court declines to enter summary judgment on the defendants' damages claims for breach of Nationwide's fiduciary duty, or duty of good faith and fair dealing.[18]

16. However, this ruling is without prejudice to Nationwide moving for summary judgment at a later date as to the defendants' damages claims for breach of its "temporary" duty to defend.

17. As above, this ruling is without prejudice to Nationwide moving for summary judgment at a later date as to the defendants' damages claims for breach of its promise to defend the Liability Lawsuits in the "reservation of rights" letters.

18. As above, this ruling is without prejudice to Nationwide moving for summary judgment at a later date as to the defendants' damages claims for breach of Nationwide's fiduciary duty, or duty of good faith and fair dealing.

### V. Nationwide's Claim for Damages

For the reasons noted above, the Court also finds that genuine issues of material fact preclude summary judgment as to Nationwide's claim in Count Three that it is entitled to defense costs incurred in defending the Liability Lawsuits.

### VI. Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment [Document # 62], is GRANTED IN PART and DENIED IN PART.