726 So.2d 496 (1999)
CARNIVAL BRANDS, INC.
v.
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY.
No. 98-CA-958
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1999.
*497 Patrick H. Patrick, Patrick, Miller, Burnside & Belleau, New Orleans, Louisiana, Attorney for Plaintiff/Appellant.
Thomas L. Gaudry, Jr., Michael D. Peytavin, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Gretna, Louisiana, Attorneys for Defendant/Appellee.
Panel composed of Judges H. CHARLES GAUDIN, SOL GOTHARD and MARION F. EDWARDS.
GOTHARD, Judge.
Plaintiff, Carnival Brands, Inc., (hereinafter "CBI") filed this suit for declaratory judgment, seeking a determination that defendant, American Guaranty and Liability Insurance Company (hereinafter "American Guaranty"), owed a duty to defend pursuant to an insurance contract issued by American Guaranty to CBI. CBI was named a defendant in a suit filed by Carnival Brand Seafood Company (hereinafter "Carnival") filed in the United States District Court for the Southern District of Florida. American Guaranty responded that there was no coverage under the policy for the acts complained of in the federal suit. Both parties moved for summary judgment. The trial court found for American Guaranty, and dismissed CBI's action against them. CBI has appealed. We reverse the decision of the trial court.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact and mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). The mover has the burden of proving no material fact exists. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991). Appellate courts should review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether summary *498 judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95) 653 So.2d 1152.
The insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Yount v. Maisano, 627 So.2d 148 (La.1993). The allegations of the petition are to be construed liberally to determine whether they set forth grounds that bring the claims alleged within the scope of the insurer's duty to defend the suit brought against the insured. Ellis v. Transcontinental Ins. Co., 619 So.2d 1130 (La.App. 4 Cir.1993), writ denied 625 So.2d 1043 (La.1993). If, assuming all the allegations of the petition to be true, there would be coverage under the policy and liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213; Ellis v. Transcontinental Ins. Co., supra, 619 So.2d 1130. An insurer's duty to defend arises whenever the pleadings against the insured discloses even a possibility of liability under the policy. Steptore v. Masco Const. Co., Inc., supra, 643 So.2d 1213. The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence. Bryant v. Motwani, 96-1351 (La.App. 4 Cir. 10/30/96), 683 So.2d 880.
CBI, plaintiff herein, was made a defendant in a federal suit filed by Carnival, on or about April 18, 1997. In that federal suit, Carnival alleged conduct constituting unfair competition and violations of the Trademark Law. More specifically, Carnival alleged:
FACTUAL BACKGROUND
5. Plaintiff Carnival has been assigned rights to the "CARNIVAL" trademark by predecessor company Mariscos de Bahia, S.A. de C.V., which had used the "CARNIVAL" trademark with seafood continuously throughout the United States since 1981.
6. The volume of sales of Mariscos de Bahia, S.A. de C.V. throughout the United States, as associated with seafood sales, is approximately $40,000,000.00.
7. Plaintiff's predecessor's products, as sold under the "CARNIVAL" brand named are well-known for their high quality.
8. Over the years, Plaintiff's predecessor has spent a considerable sum of money in promotion and advertising expenses associated with its "CARNIVAL" trademark.
9. Plaintiff is the owner of a U.S. Trademark Application filed March 20, 1996 for "CARNIVAL", as used for "seafood, namely shrimp, in International Class 29".
10. Plaintiff is also the owner of U.S. Trademark Registration No. 1,859,216 for "CARNIVAL", as used with a variety of seafood.
11. Plaintiff, as did Plaintiff's predecessor, Mariscos de Bahia, S.A. de C.V., ships seafood products throughout the United States, in particular, in and through Florida.
12. Defendant CBI, upon information and belief, began using the trademark "CARNIVAL" alone and in the form of "CARNIVAL BRANDS, INC." relatively recently in the early '90's.
13. Upon information and belief, Defendant CBI knew of use of the "CARNIVAL" trademark by Mariscos de Bahia, S.A. de C.V., the predecessor company to Carnival.
14. Upon information and belief, Defendant CBI has recently expanded its business to include nationwide distribution through the internet and through QVC, the cable TV shopping channel.
15. Plaintiff possesses common law rights in the trademark "CARNIVAL" under which Plaintiff and its predecessor have been doing business since 1981.

*499 16. Plaintiff's common law trademark rights have been assigned to Plaintiff from Mariscos de Bahia, S.A. de C.V., which in turn developed its rights through substantial expenditures of time, effort and money.
17. Plaintiff and its predecessor have spent considerable sums of money promoting their trademark "CARNIVAL". Upon information and belief, Defendant provides seafood products, as does Plaintiff.
18. Defendant, upon information and belief, advertises and ships its product into the State of Florida. In particular, Defendant regularly fills orders solicited through the internet, QVC and other advertising.
Defendants in this suit, American Guaranty, issued a policy of insurance, in effect from 1/11/96 to 1/11/97. The insurance policy at issue provided coverage as follows:
b. This insurance applies to:
(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services:
But only if the offense was committed in the "coverage territory" during the policy period.
The policy defines advertising injury as:
1. "Advertising Injury" means injury arising out of one or more of the following offenses:
a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
b. Oral or written publication of material that violates a person's right of privacy;
c. Misappropriation of advertising ideas or style of doing business; or
d. Infringement of copyright, title or slogan.
The policy further states:
2. Exclusions.
This insurance does not apply to:
a. "Personal injury" or "advertising injury":
(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or
(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.
b. "Advertising injury" arising out of:
1. Breach of contact, other than misappropriation of advertising ideas under an implied contract;
2. The failure of goods, products or services to conform with advertised quality or performance;
3. The wrong description of the price of goods, products or services; or
4. An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.
In this case, defendant argues that they have no duty to provide a defense under the terms of the insurance policy because the actions complained of in the federal suit are not covered within the terms of the policy and because the first publication occurred prior to the policy's effective date. The trial judge apparently agreed with American Guaranty's arguments, since he granted summary judgment finding that there was no duty to defend under the policy. In this appeal, CBI alleges that the allegations in *500 the federal suit, if proven, are acts which would be covered under the terms of the insurance policy. CBI further argues that the first publication exclusion is not applicable to the facts of this case.
We agree with CBI's first contention that the allegations in the federal petition, if proven, describe conduct which would be covered under the terms of the insurance policy. Carnival has alleged that CBI has misappropriated and used the name "Carnival", in violation of unfair trade practices law and Trademark law, and further that CBI has misappropriated the name "Carnival" for use in nationwide distribution. The policy at issue clearly provides coverage for infringement of copyright, title or slogan, and it also provides coverage for actions involving misappropriation of advertising ideas or style of business. If the language in the insurance contract is clear and unambiguous, the court must enforce the contract as written. La. C.C. art.2046.
American Guaranty also alleges that coverage in this case is excluded because it is an advertising injury whose first publication took place before the beginning of the policy period.
In determining an insurer's duty to defend, the allegations of plaintiffs' petition are interpreted liberally to determine whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend the suit. If the petition discloses even a possibility of liability under the policy, the insurer is obligated to provide a defense. Rio Rouge Development Corp. v. Security First Nat. Bank, 610 So.2d 172 (La.App. 3 Cir.1992). Even though the petition may allege numerous claims for which coverage is excluded under the policy, the duty to defend may nonetheless exist if there is at least one allegation in the petition which is not unambiguously excluded from coverage. Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, 611 So.2d 158 (La.App. 3 Cir.1992).
The petition in the federal suit alleges that CBI misappropriated the use of the name "Carnival" in the early 1990's and further that they "recently" misappropriated the use of the name "Carnival" in nationwide distribution on the Internet and on the Quality Value Shopper's Channel. Therefore, in addition to other allegations, the petition alleges that there was an advertising injury which occurred when CBI first used the name "Carnival" in national media. Carnivals' petition, filed in April of 1997, only alleges that CBI misappropriated the term for use in national commerce "recently" and therefore it can be construed that the petition alleged a claim for first injurious publication and/or misappropriation occurring when during the terms of the policy, from January 1996 to January 1997.
Accordingly, we find that the trial court erred in granting summary judgment in this matter.
For the above discussed reasons, the decision of the trial court granting summary judgment in favor of American Guaranty is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.