GENERAL CASUALTY COMPANY
OF WISCONSIN, Plaintiff,

v.

WOZNIAK TRAVEL, INC. d/b/a
Hobbit Travel, Defendant,

The Saul Zaentz Company d/b/a
Tolkien Enterprises,
Defendant.

No. A08–321.

Supreme Court of Minnesota.

March 19, 2009.

Jeffrey A. Evans, Cook & Franke S.C., Milwaukee, WI; and James L. Haigh, Trina R. Alvero, Andrea E. Reisbord, Cousineau McGuire Chartered, Minneapolis, MN, for plaintiff.

Thomas C. Mielenhausen, Christopher L. Lynch, Jessica L. Meyer, Lindquist & Vennum P.L.L.P., Minneapolis, MN, for defendant Wozniak Travel, Inc. d/b/a Hobbit Travel.

Gary J. Haugen, Mary R. Vasaly, Margo S. Brownell, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for amici curiae Land O'Lakes, Inc., 3M Company and Apogee Enterprises, Inc.

## OPINION

MEYER, Justice.

The Saul Zaentz Company d/b/a Tolkien Enterprises (Tolkien) sued Wozniak Travel, Inc. d/b/a Hobbit Travel (Hobbit Travel) alleging trademark infringement for the wrongful use of the word "hobbit" in Hobbit Travel's business name. Hobbit Travel's insurer, General Casualty Company of Wisconsin (General Casualty), sought declaratory relief in the United States District Court for the District of Minnesota from its duty to defend and indemnify Hobbit Travel. The federal district court certified two questions to this court:

1) Does trademark infringement fall within the scope of "misappropriation of advertising ideas or style of doing business" or constitute "infringement of copyright, title or slogan" as set forth in the CGL [commercial general liability] policy?

2) Is a trademark an "advertising idea" or does trademark infringement constitute "infringing upon another's

copyright, trade dress or slogan" as set forth in the CUL [commercial umbrella liability] policy?

We answer both questions in the affirmative.

Tolkien is a California corporation that owns the right to use and license trademarks related to the late Professor J.R.R. Tolkien's novels *The Hobbit* and *The Lord of the Rings* trilogy. Professor Tolkien created the term "hobbit" in the 1930s to describe the fictional, three-foot-tall characters featured in those novels. Since publication, the novels and their hobbit characters have enjoyed widespread popularity, which exponentially grew as the novels were developed into plays, movies, and merchandise. To promote and protect its increasingly valuable interests in the Tolkien works, Tolkien became the owner of numerous trademarks, including the term "hobbit," and established a worldwide licensing program to publicize these interests.

Hobbit Travel is a Minnesota-based travel agency that has been operating under that name since 1976. Hobbit Travel established a website directed at travel consumers all over the United States. This website incorporated the term "hobbit" in displaying Hobbit Travel's name, in titles of special offers, and in several connected domain names. Tolkien's discovery of this website prompted a 2006 lawsuit against Hobbit Travel in the United States District Court for the Northern District of California for trademark infringement, trademark dilution, and unfair competition.

Tolkien claimed Hobbit Travel was wrongfully appropriating Tolkien's "hobbit" trademark, confusing the public about Hobbit Travel's association with Tolkien, and capitalizing on Tolkien's goodwill. Tolkien, through its licensees, utilized the term "hobbit" and the corresponding characters for its own advertising and merchandising of the Tolkien works. Some marketing specifically combined the "hobbit" mark with the theme of travel, as the journeys of hobbits compose a significant thread in each novel's story. The term "hobbit" was licensed for travel products such as bags, souvenirs, board games, and computer games. One licensee made an agreement with Air New Zealand for the airline to market itself as "Airline to Middle-earth" and paint the hobbit characters on its jets. Another Tolkien licensee arranged for an online travel ticketing service to promote travelling to London and Canada for a stage musical adaption of *The Lord of the Rings.* Tolkien argued that its market for these and other services was "irreparably harmed" by Hobbit Travel's use of "hobbit," and asked for injunctive relief, monetary damages, and attorney fees.[1]

At the time Tolkien filed suit against Hobbit Travel, General Casualty insured Hobbit Travel under a Commercial General Liability (CGL) policy and a Commercial Umbrella Liability (CUL) policy. General Casualty agreed to defend the Tolkien/Hobbit Travel litigation under a reservation of rights, and filed a complaint for declaratory relief in the United States District Court of Minnesota. In its complaint, General Casualty asserted that the allega-

---

**1.** The District Court of Northern California dismissed all of Tolkien's claims based on the affirmative defense of laches while the certified questions were under consideration by this court. *Saul Zaentz Co. v. Wozniak Travel, Inc.,* No. C–06–5421, 2008 WL 2949423 (N.D.Cal. July 29, 2008). Since Tolkien has filed a notice of appeal with the Ninth Circuit Court of Appeals and General Casualty's declaratory-judgment action in the Minnesota federal district court has not been fully resolved, we continue our analysis of the certified questions.

tions made by Tolkien in the underlying complaint failed to allege an enumerated "advertising injury" offense under General Casualty's insurance policies. Both General Casualty and Hobbit Travel moved for summary judgment on whether these "advertising injury" definitions extended coverage for Tolkien's allegations.

The federal district court determined there was no controlling decision on "this important question of Minnesota law." Accordingly, the district court certified to this court whether Tolkien's trademark infringement allegations fall within the scope of General Casualty's policies. We accepted the certified questions.

■■■ This court "may answer a question of law certified . . . by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn.Stat. § 480.065, subd. 3 (2008).[2] The certified questions presented are questions of law that we review de novo. *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 600 (Minn.2001). The interpretation of an insurance policy, the underlying issue in this case, is also a legal issue subject to de novo review. *Home Ins. Co. v. Nat'l Union Fire Ins.*, 658 N.W.2d 522, 527 (Minn. 2003).

■■■ Because most insurance policies are preprinted forms drafted solely by insurance companies—basically contracts of adhesion—policy words of inclusion will be broadly construed, and words of exclusion are narrowly considered. *Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn.2000); 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 22:31 (3d ed.2005). Unambiguous words will be given their "plain, ordinary, and popular meaning." *Minn. Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn.1990) (citing *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn. 1984)). Ambiguous words, however, will be construed against the insurer according to the "reasonable expectations" of the insured. *Id.* If undefined terms are reasonably susceptible to more than one interpretation, the terms must be interpreted liberally in favor of finding coverage. *Wanzek Constr., Inc. v. Employers Ins. of Wausau*, 679 N.W.2d 322, 329 (Minn.2004).

I.

The first certified question from the federal district court of Minnesota asks:

Does trademark infringement fall within the scope of "misappropriation of advertising ideas or style of doing business" or constitute "infringement of copyright, title or slogan" as set forth in the CGL policy?

■■■ This question stems from the advertising-injury definitions in General Casualty's CGL policy; General Casualty's

---

**2.** Although two cases have analyzed similar issues under Minnesota law, there is no controlling decision. An unpublished decision from the Minnesota Court of Appeals in 1997 concluded that trademark infringement allegations fall within the definition of advertising injury. *See Williamson v. N. Star Cos.*, No. C3–96–1139, 1997 WL 53029 (Minn.App. Feb.11, 1997). Two years later, the Eighth Circuit, applying Minnesota law, held that trademark infringement does not fall within

that definition. *See Callas Enters., Inc. v. Travelers Indem. Co.*, 193 F.3d 952 (8th Cir. 1999). Neither decision controls here: the unpublished Minnesota court of appeals decision does not constitute precedent. *In re Collier*, 726 N.W.2d 799, 806 (Minn.2007). Further, matters of state law, such as the issue of insurance policy interpretation, are not controlled by federal precedent. *Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 312–13 (Minn.2006).

duty to defend arises if Tolkien's alleged damages arose under one of these advertising-injury definitions. An insured's "duty to defend extends to every claim that 'arguably' falls within the scope of coverage[, and] the duty to defend one claim creates a duty to defend all claims." *Wooddale Builders, Inc. v. Md. Cas. Co.,* 722 N.W.2d 283, 302 (Minn.2006). An insurer trying to avoid a duty to defend "has the burden of establishing that all parts of the cause of action fall clearly outside the scope of coverage." *Metro. Prop. & Cas. Ins. Co. v. Miller,* 589 N.W.2d 297, 299 (Minn.1999). To determine whether a duty exists, the allegations in the underlying complaint and the surrounding facts will be compared with the relevant language in the insurance policy. *Haarstad v. Graff,* 517 N.W.2d 582, 584–85 (Minn. 1994).

Relevant provisions in the CGL policy state that General Casualty will defend any suit seeking damages because of "advertising injury" to which the insurance applies. The policy provides that

> "[a]dvertising [i]njury" means injury arising out of one or more of the following offenses:
>
> . . . .
>
> c. Misappropriation of advertising ideas or style of doing business; or
>
> d. Infringement of copyright, title or slogan.

A threshold question is whether the absence of the word "trademark" in the advertising-injury definitions excludes Tolkien's claims. General Casualty argues that if its policies were intended to provide coverage for trademark infringement, they would have expressly referenced trademark infringement in them, citing to cases from the Sixth and Eighth Circuits that used this reasoning to support their holdings that trademark infringement claims do not constitute advertising injury. *See Callas Enters., Inc. v. Travelers Indem. Co.,* 193 F.3d 952, 956–57 (8th Cir.1999); *ShoLodge, Inc. v. Travelers Indem. Co.,* 168 F.3d 256, 260 (6th Cir.1999); *Advance Watch Co. v. Kemper Nat'l Ins. Co.,* 99 F.3d 795, 803 (6th Cir.1996).

We conclude that the absence of the word "trademark" in the CGL policy does not foreclose the possibility that trademark infringement falls within the scope of the advertising-injury definitions in General Casualty's policy. First, the policy provides coverage for injuries "arising out of" the advertising-injury definitions, which expands the scope of the policy language since this court has defined "arising out of" broadly as "originating from," "growing out of," or "flowing from." *Dougherty v. State Farm Mut. Ins. Co.,* 699 N.W.2d 741, 744 (Minn.2005). Second, the Minnesota rules of insurance policy interpretation require policies to be read in favor of finding coverage, and require courts to look past the legal nomenclature to the underlying allegations. Finally, the duty to defend applies to claims that "arguably" fall within the policy, and if insurance policy language is susceptible of more than one meaning, it must be given the meaning that favors coverage.[3] *See Wanzek,* 679 N.W.2d at 329.

---

3. Of historical note, various courts have observed that prior to 1986, the Insurance Service Office, which publishes widely-used insurance forms, had a standard CGL policy form that "expressly *excluded* injuries resulting from trademark . . . infringement." *Acuity v. Bagadia,* 310 Wis.2d 197, 750 N.W.2d 817, 826 (2008) (internal quotations omitted). But in 1986 those forms were revised to eliminate that exclusion. *Id.* This not only implies that trademark claims are now included under these policies, but also speaks to the fact that General Casualty could have expressly excluded trademark claims if that was its intention.

We turn to the question of whether Tolkien's damages arose out of one of the advertising-injury definitions. General Casualty argues that all of the policy terms have unambiguous definitions that do not include allegations of trademark infringement. Hobbit Travel responds that, at a minimum, the underlying allegations plainly fall within the scope of "infringement of title" from the "infringement of copyright, title or slogan" provision.[4]

Only one other state supreme court has ruled on trademark infringement allegations under the standard CGL policy definitions of advertising injury. The Wisconsin Supreme Court recently held that "infringement of title" encompasses trademark infringement claims. *Acuity v. Bagadia*, 310 Wis.2d 197, 750 N.W.2d 817, 827 (2008). The underlying case involved a judgment for Symantec Corporation, which owned various "Norton" trademarks, against a business selling software using the "Norton" name. *Id.* at 820. The business's insurer filed a declaratory-judgment action, asserting that advertising injury provisions in its CGL policy did not cover Symantec's trademark infringement allegations. *Id.* at 821.

The Wisconsin Supreme Court held that trademark infringement falls within the plain and ordinary meaning of "infringement of title." *Id.* at 827. The court first turned to dictionary definitions of "title" and "trademark," finding several overlaps in terminology. *Id.* at 824–25 (citing *Random House Unabridged Dictionary* 1989 (2d ed.1993); *Black's Law Dictionary* 1485, 1493 (6th ed.1990)). The court also relied on decisions that have broadly construed the plain meaning of "title" to include the narrower term "trademark." *Id.*

at 825–26 (citing *Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 736 (7th Cir.2002) (relying on cases defining "title" as "names and related trademarks," including names of books, songs, products, and services) (citations omitted)); *see also Williamson*, 1997 WL 53029, at *4 (stating that "title" is broader than "trademark" because a title becomes a trademark through extended use or statutory registration). The Wisconsin Supreme Court adopted a broad construction of the plain meaning of title, stating that such an interpretation was more consonant with the canons of insurance policy interpretation. *Acuity*, 750 N.W.2d at 827.

The conclusion of the Wisconsin Supreme Court is in line with a substantial majority of decisions from other courts that have construed the advertising-injury definitions in CGL policies to include trademark infringement. A large number of federal district courts and some federal circuit courts have given coverage under the advertising-injury definitions. *See, e.g., Am. Employers' Ins. Co. v. DeLorme Publ'g Co.*, 39 F.Supp.2d 64, 77 (D.Me. 1999) (listing federal district court decisions finding coverage); *see also State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co.*, 343 F.3d 249 (4th Cir.2003). Additionally, most state court opinions on this issue—an issue of insurance policy interpretation that generally belongs to state courts—have given coverage under the advertising-injury provisions. *See, e.g., Acuity*, 750 N.W.2d at 826–27; *Carnival Brands, Inc. v. Am. Guar. & Liab. Ins. Co.*, 726 So.2d 496 (La.Ct.App.1999); *Westfield Ins. Co. v. Factfinder Mktg. Research, Inc.*, 168 Ohio App.3d 391, 860 N.E.2d 145 (2006).

4. The duty to defend is triggered if even one claim is covered by the insurance policy, *Wooddale Builders*, 722 N.W.2d at 302. Similarly, since all of the advertising-injury definitions are phrased in the disjunctive, only one provision of the definitions needs to cover an allegation to trigger General Casualty's duty to defend.

The minority view was first articulated by the Sixth Circuit in *Advance Watch*, 99 F.3d at 802. The court closely examined the scope of "misappropriation of advertising ideas," and held that each word's unambiguous definition in tort or common law would be too stretched by including the extensive body of law protecting trademarks. *Id.* at 802–03. The Sixth Circuit reinforced this holding in a later case where it held that each word in "infringement of copyright, title or slogan" is unambiguous, with "title" having an ordinary meaning of "the non-copyrightable title of a book, film, or other literary or artistic work." *ShoLodge*, 168 F.3d at 259 (citation omitted). The court held that infringement of a trademarked hotel name did not fall within that definition, because the name of a business is not the same as the name of an artistic work. *Id.* at 260.

The minority view has had a limited following by other jurisdictions, a following that includes the Eighth Circuit. *Callas*, 193 F.3d at 956–57; *Nationwide Mut. Ins. Co. v. Mortensen*, 222 F.Supp.2d 173, 185–86 (D.Conn.2002). In *Callas*, the Eighth Circuit had concluded that trademark claims were barred from a defense because the claims arose from a breach of contract, but went on to analyze the scope of the policy's advertising-injury definitions. 193 F.3d at 955–56. Relying exclusively on the Sixth Circuit in *Advance Watch* and *ShoLodge*, the *Callas* court determined that trademark infringement does not fall within the scope of advertising-injury definitions. *Id.* at 957.

Although the *Callas* court applied Minnesota law, we are not persuaded by its conclusion. The court did not have to reach the advertising-injury issue because the claims were excluded from coverage, and the court made no mention of Minnesota insurance policy construction. Additionally, the narrow interpretations in the minority view have been criticized by some courts. *See Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1190 (11th Cir.2002) (listing critical courts).

■ We are persuaded by the reasoning of the Wisconsin Supreme Court and the trend of other courts in concluding that trademark infringement falls within the plain and ordinary meaning of "infringement of title." In this case, Tolkien specifically alleged that Hobbit Travel misused its book name and character labels. In particular, Tolkien alleges the right "to use and license others to use, marks related to the Tolkien Works including, without limitation, the titles of each of the Tolkien Works and the names and visual representations of the characters. . . ." Characters throughout all the novels are termed "hobbits"—one of the novels is even called *The Hobbit*. Hobbit Travel intentionally used the name of this novel and its characters in its agency name and website.

Accordingly, we hold that Tolkien's trademark allegations fall within the plain meaning of "infringement of title" in General Casualty's CGL policy. Because we conclude that the trademark infringement allegations fall within the scope of "infringement of title," we need not reach the issue of whether the allegations also fall within the scope of "infringement of copyright . . . or slogan" or "misappropriation of advertising ideas or style of doing business."

## II.

The second certified question from the federal district court of Minnesota asks:

Is a trademark an "advertising idea" or does trademark infringement constitute "infringing upon another's copyright, trade dress or slogan" as set forth in the CUL policy?

General Casualty's CUL policy defines "advertising injury" in part as injury arising out of the "use of another's advertising idea in your 'advertisement.'"[5] As "advertising" is not definitively defined by General Casualty's policies,[6] we must define the term "advertising" to determine whether Tolkien's damages arose out of that advertising-injury definition.

General Casualty asks us to adopt the Fifth Circuit's definition of advertising as "a device for the solicitation of business." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 462–63 (5th Cir. 2003). The Fifth Circuit, adopting a common understanding of "advertising" as referring to "a device for the solicitation of business," concluded that trademarks are not such a device because they are only names for goods or services. *Id.* at 463 (stating that the use of a trademark "would not, by itself, appear to serve as a 'marketing device[ ] designed to induce the public to patronize' establishments").

Hobbit Travel argues that the definition of advertising can be construed as broadly as "the action of calling something to the attention of the public." *Hyman*, 304 F.3d at 1188 (quoting *Webster's Collegiate Dictionary* (9th ed.1983)) (internal citation omitted). Hobbit Travel cites to decisions holding that trademarks are inherently advertising: in distinguishing a product, a trademark plays an important role in promoting that product to the public. *See, e.g., State Auto*, 343 F.3d at 258 n. 12; *DeLorme Publ'g*, 39 F.Supp.2d at 74.

According to the Wisconsin Supreme Court,

> A standard narrow definition and a standard broad definition of "advertising" have evolved in the common law. The standard narrow definition is: "widespread announcement or distribution of promotional materials." The standard broad definition is: "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business."

*Acuity*, 750 N.W.2d at 828 (quoting *Fireman's Fund Ins. Co. v. Bradley Corp.*, 261 Wis.2d 4, 660 N.W.2d 666 (2003)) (citations omitted). We agree with the *Acuity* court's conclusion that either of these definitions is a reasonable interpretation of the term "advertising." If undefined terms in an insurance policy are reasonably susceptible to more than one interpretation, the terms must be interpreted liberally in favor of finding coverage. *Wanzek*, 679 N.W.2d at 329. Therefore, we interpret the term "advertising" in favor of finding coverage and adopt the standard broad definition as: "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business."

We apply this broad definition to the facts of this case. Tolkien directly alleged in its underlying complaint that Tolkien and its licensees have "aggressively promoted" the "hobbit" trademark and

---

5. The CUL policy states that if the underlying policy applies—the CGL policy in this case—General Casualty will have "the right, but not the duty, to defend." Although we held that the CGL policy applies, we will answer the second question in case the federal district court of Minnesota finds another reason to preclude coverage under the CGL policy.

6. General Casualty changed its CUL policy in 2003 by revising the definition of "advertising injury," adding a definition for "advertisement," and adding an exclusion for trademark infringement. Whether Wozniak had notice of these changes is a contested issue before the federal district court of Minnesota. For purposes of the certified questions we have been asked to answer, we will presume that Wozniak did not have notice of these changes and will answer the questions under the pre–2003 policy language.

have used the "hobbit" mark in connection with a wide variety of commercial goods and services. Further, Tolkien's licensees used the theme of travel in the solicitation of business: hobbits were painted on jets to distinguish Air New Zealand as the "Airline to Middle-earth," and travel packages to other countries were set up to sell theater tickets. One Tolkien representative stated that "a large part of the appeal of the Tolkien mythos, is that Middle Earth is a place that you can travel to," a main reason why Tolkien used travel as a "marketing point." Tolkien used the word "hobbit," its corresponding characters, and travel as an idea to promote the various mediums of its novels to the public, actions that fall within the scope of "advertising idea."

Tolkien also alleged that Hobbit Travel used the word "hobbit" in its domain name and on its website to attract the national public's attention to its travel agency, and capitalize on the goodwill surrounding the Tolkien works. These uses of the word "hobbit" by Hobbit Travel were made in connection with the solicitation of travel business within our broad reading of "advertisement"; thus, Tolkien's damages arose out of Hobbit Travel's "use of another's advertising idea in [its] 'advertisement.'" Because we conclude that "hobbit" was used as an "advertising idea," we need not address the alternative basis for finding coverage in the CUL policy: whether trademark infringement constitutes "infringing upon another's copyright, trade dress or slogan."

Certified questions answered in the affirmative.

ANDERSON, PAUL H., and DIETZEN, JJ., took no part in the consideration or decision of this case.

GILDEA, Justice (concurring).

I join in the majority's conclusion that coverage exists under both the CGL and the CUL policies. I write separately because I disagree with the way in which the majority reaches its conclusion that there is coverage under the CGL policy.

The CGL policy provides for coverage in the event of an "advertising injury." The policy defines advertising injury to mean "injury arising out of one or more of the following offenses: ... c. Misappropriation of advertising ideas ...; or d. Infringement of copyright, title or slogan." The majority finds coverage under the provision for "[i]nfringement of ... title." I agree with the dissent's analysis of this provision and would not find coverage under it.

But in my view there is coverage under the "misappropriation of advertising ideas" provision. This provision requires that we consider the terms "misappropriation" and "advertising ideas." Turning to "misappropriation," the term is not ambiguous in my view. "Misappropriation" is "understood as the unlawful taking or use of another person's property." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 461–62 (5th Cir.2003) (citing *Webster's Third New Int'l Dictionary* 1442 (1993) and *Black's Law Dictionary* 998 (6th ed.1990)). The wrongful use of Tolkien's property—the HOBBIT mark—is precisely the issue raised in Tolkien's Complaint.

Turning next to "advertising idea," I agree with the majority's conclusion that simply because HOBBIT is a trademark does not mean that it is not an "advertising idea." *State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co.*, 343 F.3d 249, 257–58 (4th Cir.2003) (noting that a trademark "serves as a prime instrument in the advertisement and sale of the seller's goods." (citing 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*

*Competition* § 3:2 (4th ed.2003))). Indeed, as the majority notes, the Complaint specifically alleges that Tolkien has used, and licensed others to use, the HOBBIT mark in the promotion of other products.

Because the Complaint alleges an "advertising injury," that Hobbit Travel has misappropriated Tolkien's advertising idea, I would hold that there is coverage under the CGL policy.

MAGNUSON, Chief Justice (dissenting).

I respectfully dissent. Neither the CGL policy nor the CUL policy at issue in this litigation use the term "trademark" in the grant of coverage. The CGL policy provides coverage for advertising injury, defined as "[m]isappropriation of advertising ideas or style of doing business" or "[i]nfringement of copyright, title or slogan." Prior to 2003, the CUL policy also provid-

ed coverage for advertising injury in the same terms.[1] A majority of courts broadly read similar policy provisions to provide coverage for trademark infringement.[2] However, in reaching that conclusion, the majority courts, in my opinion, reach too far.

"Trademark" is a term with a clear meaning in commercial law. As the Sixth Circuit Court of Appeals held in *Advance Watch Co. v. Kemper National Insurance Co.*, trademark infringement is a "distinct category of actionable conduct" and, therefore, the "only reasonable assumption" is that if the policy was meant to cover trademark infringement, the policy would have said so. 99 F.3d 795, 803 (6th Cir.1996).

The underlying litigation in this case does *not* seek to enjoin or otherwise prohibit advertising in general. Instead, it is directed narrowly and specifically at claimed trademark infringement. Although

1. After 2003, the umbrella policy was modified in several respects. First, under Section I(1), Coverage B, the policy continued to provide coverage for advertising injury to which the insurance applied. However, the policy defined "advertising injury" as injury arising out of "[t]he use of another's advertising idea in your 'advertisement'," or "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Commercial Umbrella Liability Coverage Form, Section V(15)(f) and (g). The insurer also added an exclusion in the policy at Section I(3)(i)(8) for infringement of copyright, patent, trademark or trade secrets. This exclusion, in turn, had an exception making it inapplicable to infringement "in your 'advertisement', of copyright, trade dress or slogan."

Whether these changes were significant enough to require some additional action by the insurer to notify the insured before they become effective is not before us. *See Canadian Universal Inc. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 575 (when an insurer by renewal of a policy or by an endorsement to an existing policy substantially reduces the prior insurance coverage provided the insured, the insurer has an affirmative duty to notify the insured in writing of the change in

coverage). The certified questions in this case ask only about the grant of coverage.

2. The majority notes at footnote 3 that, in 1986, the Insurance Service Office altered its standard policy language by removing a specific provision that excluded coverage for trademark infringement. That exclusion was returned to the CUL policy in 2003. *See, supra,* n. 1. The majority concludes that change "implies that trademark claims are now included under these policies." The revised standard policy, however, also changed the coverage grant from covering "unfair competition" to covering "misappropriation of advertising ideas and style of doing business." *Acuity v. Bagadia,* 310 Wis.2d 197, 750 N.W.2d 817, 826 (2008) (citation omitted). Given the change in the grant of coverage, the removal of the trademark exclusion is far from convincing evidence of intent to cover trademark claims. Moreover, while it is true, as the majority notes, that it would have been an easy matter to exclude coverage for trademark claims, it is wrong to assume something that is not excluded is, by that fact, included in coverage. Grants of coverage must flow from the insuring agreement, not from the absence of an exclusion.

the majority concludes that "trademark" is included in the grant of coverage under the "infringement of title" provision, the Sixth Circuit has, correctly in my view, held that "the word 'title' generally refers to the non-copyrightable title of a book, film, or other literary or artistic work." *ShoLodge, Inc. v. Travelers Indem. Co.*, 168 F.3d 256, 259 (6th Cir.1999) (citation omitted). The Eighth Circuit Court of Appeals followed the Sixth Circuit's interpretation of the policy language, stating that it was "natural, reasonable, and unforced," and accordingly held that the term "infringement of title" did not include trademark actions. *Callas Enters. Inc. v. Travelers Indem. Co.*, 193 F.3d 952, 957 (8th Cir.1999). The *Callas* court also embraced the rest of the *ShoLodge* holding. "The [Sixth Circuit] found that trademarks and service marks were not 'copyrightable,' that they were not 'slogan[s],' and that they could not be considered 'title[s],' as that term was not ambiguous." *Id.* at 956. The term "Hobbit" is not a slogan or title, and while it may be a trademark, is not copyrightable, leaving a claim of trademark infringement outside of the scope of coverage. And the Fifth Circuit has held that, under Texas law, "advertising" is soliciting business, and trademarks, which only protect the identity of the product, are not solicitations of business. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 462–63 (5th Cir.2003).

The majority relies, in part, on the Wisconsin Supreme Court decision in *Acuity v. Bagadia*, 310 Wis.2d 197, 750 N.W.2d 817, 824–27 (2008), where the court held that a grant of coverage for "infringement of title" includes trademark actions, basing its decision on dictionary definitions and other case law. I am more persuaded by the Sixth and Eighth Circuit opinions. Although there may be similarities between the definition of "title" and the definition of "trademark," trademark infringement is a commonly litigated distinct theory of law with a clearly established meaning. It cannot be said that a trademark infringement lawsuit arguably[3] falls under the "infringement of title" language in the policy.

My disagreement here is more fundamental than simply a rejection of one line of authority in favor of another contrary line. I disagree with the logic of the majority line of cases. It amounts to saying that "because X is covered, and Y is like X, and Z is like Y, then X and Z are the same, and both are covered." Insurance policies grant coverage with fair precision. It is not the role of the courts to stretch that grant of coverage by linking analogies.

Here, the policies' grants of coverage did not include trademark infringement. Accordingly, I would hold that there was no duty to defend under Minnesota law.

---

**3.** I also disagree with the majority's analysis of when claims "arguably" fall within coverage. In order to determine whether the claim "arguably" falls within coverage, we should compare "the wording of the policy to the allegations of the underlying complaint." *Franklin v. W. Nat'l. Mut. Ins. Co.*, 574 N.W.2d 405, 407 (Minn.1998) (citing *Ross v. Briggs and Morgan*, 540 N.W.2d 843, 847 (Minn.1995)). The analysis is *not* a consideration of what the policy language "arguably" means—the language is either clear and unambiguous or the language is ambiguous and construable. The analysis of whether the coverage is "arguable" is aimed at whether the allegations in the underlying litigation can be said to "arguably" fall within the prescribed scope of coverage without requiring that any factual uncertainties be resolved before a duty to defend is found. Here, an underlying trademark infringement claim does not "arguably" fall within a policy that clearly does not cover trademark claims.