# United States Court of Appeals
## For the Eighth Circuit

—————————————————

No. 13-2918

—————————————————

Sletten & Brettin Orthodontics, LLC; Daniel W. Sletten, DDS

*Plaintiffs - Appellants*

v.

Continental Casualty Company; Wells Fargo Insurance Services USA, Inc.

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 7, 2014
Filed: March 19, 2015

——————————

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Sletten & Brettin Orthodontics, LLC and Daniel Sletten appeal the district court's[1] dismissal of their complaint with prejudice. We affirm.

———————————

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

## I.

In 2006, Daniel Sletten, an orthodontist practicing in Minnesota and Wisconsin, bought general liability and personal injury liability insurance from Continental Casualty Company ("Continental") through Wells Fargo Insurance Services ("Wells Fargo"). The next year, Sletten formed Sletten & Brettin Orthodontics, LLC ("S&B"). S&B opened an office in Hudson, Wisconsin and employed Bryan Brettin to practice orthodontics there. Sletten notified Wells Fargo that he had opened the Hudson office and requested coverage for this business location. Wells Fargo added the Hudson office as an additional insured location but never added S&B as a named insured.

In 2012, Douglas Wolff, a dentist, and St. Croix Valley Dental, PLLC, (together referred to as "St. Croix") sued S&B and Brettin in Minnesota state court. The complaint alleged that Brettin, acting "on behalf of and with the knowledge and consent of" S&B, used his neighbor's wireless network to post defamatory comments about St. Croix to the Internet. Three times in 2011, Brettin allegedly posed as a patient of St. Croix Valley Dental and criticized Wolff's orthodontia. For example, one review using the screen name "Hockey Mom" claimed that the reviewer's son required oral surgery after his braces were removed at St. Croix Valley Dental and warned potential patients, "[b]uyer beware." St. Croix alleged three claims: defamation and libel, civil conspiracy, and unfair competition. Each claim specifically alleged that S&B and Brettin intended to injure St. Croix's reputation.

S&B and Brettin tendered the defense of the lawsuit to Continental, but Continental refused to defend because the policy did not identify S&B as a named insured. S&B and Sletten then sued Continental and Wells Fargo in Minnesota state court seeking a declaration that Continental must defend S&B and Brettin, costs related to their legal defense, and reformation of the insurance policy to include S&B as a named insured. After Continental and Wells Fargo removed the case to federal

district court, Continental filed a motion to dismiss the complaint with prejudice, which Wells Fargo joined.[2]

The district court granted Continental and Wells Fargo's motion and dismissed the lawsuit. The court held that the insurance policy excluded coverage for acts done with the intent to injure and that because every claim in St. Croix's complaint pleaded that S&B and Brettin acted with the intent to injure St. Croix, Continental and Wells Fargo had no duty to defend S&B and Brettin. The court declined to address S&B and Sletten's reformation argument, explaining that Continental had no duty to defend regardless of whether S&B was a named insured of the policy. S&B and Sletten appealed the district court's order arguing that, under Minnesota law, Continental has a duty to defend S&B and Brettin.

II.

We review a district court's grant of a motion to dismiss *de novo*, accepting as true all facts pleaded by the non-moving party and granting the non-moving party all reasonable inferences. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The parties agree that Minnesota law applies in this diversity case, and we therefore apply Minnesota law. *See Netherlands Ins. Co. v. Main St.*

---

[2]Because Wells Fargo filed an answer before joining Continental's Rule 12(b)(6) motion to dismiss, its motion was not timely. *See* Fed. R. Civ. P. 12(b). However, S&B and Sletten acknowledge that the distinction between a Rule 12(c) and a Rule 12(b)(6) motion is "purely formal" and do not challenge the district court's order on this procedural ground. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Accordingly, we refer to Continental and Wells Fargo's joint motion as a motion to dismiss.

*Ingredients, LLC*, 745 F.3d 909, 912-13 (8th Cir. 2014). In applying Minnesota law, "[w]e must predict how the Supreme Court of Minnesota would rule, and we follow decisions of the intermediate state court when they are the best evidence of Minnesota law." *Id.* (quoting *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012)).

In order to determine if Continental has a duty to defend, we must interpret the insurance policy and compare its coverage terms to the allegations in St. Croix's complaint. *See Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W.2d 411, 415 (Minn. 1997). We first interpret the insurance policy in accordance with Minnesota law and address S&B and Sletten's arguments pertaining to the policy's construction. After determining the scope of the policy's coverage, we apply its terms to the facts alleged in the underlying complaint. For the reasons discussed below, we conclude that the policy excludes coverage for defamation committed with an intent to injure and that, accordingly, Continental has no duty to defend against St. Croix's lawsuit because it alleged only that S&B's and Brettin's conduct was intended to injure.

A.

S&B and Sletten argue that the Continental policy is ambiguous and that this ambiguity requires Continental to defend against the St. Croix lawsuit. *See Wanzek Constr., Inc. v. Emp'rs Ins. of Wausau*, 679 N.W.2d 322, 329 (Minn. 2004) (construing an ambiguous exclusion in favor of the insured); *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009). Interpretation of an insurance policy, including whether a contract is ambiguous and whether an exclusion is valid and enforceable, is a question of law, which we decide *de novo*. *Grinnell Mut. Reins. Co. v. Schwieger*, 685 F.3d 697, 700-01 (8th Cir. 2012). When the language of an insurance policy is clear and unambiguous, it "must be given its usual and accepted meaning." *Wanzek Constr., Inc.*, 679 N.W.2d at 324-25 (quoting *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998)). Minnesota law

construes an insurance policy's words of inclusion broadly and words of exclusion narrowly. *Wozniak Travel, Inc.*, 762 N.W.2d at 575.

Applying Minnesota law, we conclude that the policy unambiguously provides coverage for defamation but excludes coverage for defamation committed with an intent to injure. The policy states that the insurer will provide a defense for and pay "all amounts, up to the limit of liability, which **you** become legally obligated to pay as a result of **injury** or **damage** . . . . The **injury** or **damage** must be caused by an **occurrence**." Bolded terms are defined in the "Definitions" section of the policy. The term "injury" encompasses a list of claims including, "oral or written publication of material that: . . . slanders or libels an entity or disparages an entity's goods, products or services." "Occurrence" is defined as "an accident, [i]ncluding continuous or repeated exposure to conditions which: A. results in **injury** and/or **damage**; and B. was not expected nor intended by **you**." The term "accident," as used within the definition of occurrence, is not defined. The policy also contains an exclusion for "**injury** or **damage you** expected or intended, or which a reasonable person could have expected."

S&B and Sletten argue that the policy is ambiguous because, on the one hand, it purports to provide coverage for several claims based on intentional acts, but on the other hand, it precludes coverage for intentional acts by defining an occurrence as an accident and including an intent-to-injure exclusion. *See Wozniak Travel, Inc.*, 762 N.W.2d at 576 ("Minnesota rules of insurance policy interpretation require policies to be read in favor of finding coverage."). The Minnesota Supreme Court interpreted an insurance policy with very similar language in *American Family Insurance Company v. Walser*, 628 N.W.2d 605 (2001). The policy in that case provided coverage for "compensatory damages which any insured becomes legally obligated to pay as damages because of bodily injury or property damage" provided that "the bodily injury or property damage [was] caused by an occurrence." *Id.* at 609. Occurrence was defined as "an *accident*, including continuous or repeated exposure

to substantially the same general harmful conditions." *Id.* The *Walser* policy also included a substantially similar exclusion for "damages due to bodily injury or property damage expected or intended from the standpoint of the insured." *Id.*

*Walser* determined that, under Minnesota case law, the term "accident" means an "unexpected, unforeseen, or undesigned happening or consequence." *Id.* at 611-12 (emphasis omitted). Because the policy in that case defined an occurrence in terms of an accident, the court applied this definition of "accident" to determine that the policy provided coverage for an incident where the insured did not intend or expect to cause injury. *Id.* at 611-13. *Walser* further explained that, under Minnesota law, "intentional act exclusion[s]" were narrowly construed as excluding only coverage for acts committed with the intent to injure. *Id.* 611-12. Accordingly, *Walser* determined that, as a general rule, insurance provisions that grant coverage for accidents and provisions that exclude coverage for intentional acts were "opposite sides of the same coin." *Id.* at 611. Applying this general rule, the Minnesota Supreme Court concluded that the *Walser* policy excluded coverage for acts that were intended to injure but covered intentional acts where the resultant injury was not intended or expected. *Id.* at 612-13.

We conclude that *Walser* controls this case. As in *Walser*, the policy here grants coverage for accidents through its definition of occurrence. And the exclusion precludes coverage for intent-to-injure acts. Thus, the two provisions here are opposite sides of the same coin, and we read them together as providing coverage for intentional acts but excluding coverage for acts committed with the intent to injure. Accordingly, the insurance policy here provides coverage for defamation in general, an intentional act, but excludes coverage for defamation committed with the intent to injure. *See Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003) ("In Minnesota, a plaintiff pursuing a defamation claim must prove that the defendant made: (a) a false and defamatory statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the

-6-

community."). And this exclusion makes sense because defamation is often committed without intending injury. *See Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 746-47 (7th Cir. 2001). For example, the defamer may have attempted to conceal the victim's name, may have thought the victim's reputation was already damaged beyond repair, or may have thought the defamatory statement was true and thus would not cause any legal injury. *Id.* Accordingly, we cannot find this insurance policy ambiguous where the Minnesota Supreme Court's *Walser* decision found substantially similar language to be enforceable. 628 N.W.2d at 609-12.

S&B and Sletten attempt to distinguish *Walser* and other intentional-act-exclusion cases because those cases involved bodily injury or property damage rather than injury caused by defamation. *See, e.g.*, *Walser*, 628 N.W.2d at 608-09; *Am. Mut. Ins. Co. v. Peterson*, 405 N.W.2d 418, 419-20 (Minn. 1987). But we think this is a distinction without a difference. Whether the injury caused is physical or reputational, the rationale for excluding coverage for acts committed with an intent to injure is the same—it eliminates the insured's ability to cause harm intentionally with impunity. *See State Farm Fire & Cas. Co. v. Schwich*, 749 N.W.2d 108, 114 (Minn. Ct. App. 2008) (explaining that Minnesota public policy bars liability coverage for serious criminal acts because it permits an insured to "consciously control the risks covered by the policy").

Our conclusion that an intent-to-injure exclusion is enforceable for defamation coverage is buttressed by our previous decision that a knowledge-of-falsity exclusion to defamation coverage was enforceable under Minnesota law. *See Callas Enters., Inc. v. Travelers Indem. Co. of Am.*, 193 F.3d 952, 957 (8th Cir. 1999) (concluding that, even if a different exclusion did not apply, coverage for defamation would have been obviated by the knowledge-of-falsity exclusion). Such knowledge-of-falsity exclusions preclude coverage for defamatory acts committed with the knowledge that the published material was false. *Id.* Accordingly, while precluding coverage for defamation committed with the intent to injure is not coextensive with an exclusion

for knowledge-of-falsity, the general principle that insurance providers may exclude coverage for more severe types of defamation is the same.

In a related argument, S&B and Sletten contend that if the policy unambiguously excludes coverage for acts done with the intent to injure, then the policy's coverage for intentional acts, such as defamation, is illusory and should be construed to provide coverage. *See Sawyer v. Midland Ins. Co.*, 383 N.W.2d 691, 695-96 (Minn. Ct. App. 1986) (declining to read an insurance term strictly because to do so would "eliminate totally its usefulness" and instead construing the provision as providing coverage). "Under the doctrine [of illusory coverage], 'liability insurance contracts should, if possible, be construed so as not to be a delusion to the insured.'" *In re SRC Holding Corp.*, 545 F.3d 661, 671 (8th Cir. 2008) (quoting *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. Ct. App. 1995)). "The doctrine of illusory coverage qualifies the general rule that insurance contracts will be enforced in accordance with their plain language." *Id.* The doctrine is best applied "where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* (quoting *Jostens, Inc.*, 527 N.W.2d at 119).

First, S&B and Sletten argue that the policy's coverage for defamation is illusory because Minnesota law requires proof of actual malice in a defamation case against a corporation or public figure. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1116 (8th Cir. 1999) ("Minnesota law considers a corporation a public figure and requires it to show that a statement was made with actual malice to establish a defamation claim.") (quoting *N.W. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997)). This argument fails. Intent to injure is not a required element for defamation claims against private individuals under Minnesota law, *Weinberger*, 668 N.W.2d at 667, and as discussed above, defamation is often committed without an intent to injure, *see Cincinnati Ins. Co.*, 260 F.3d at 746-47. Thus, even assuming that S&B and Sletten are correct that the policy excludes

coverage for defamation committed against public figures and corporations because proving actual malice necessarily proves an intent to injure, the policy provides coverage for many claims of defamation committed against private individuals. *See BancInsure, Inc. v. Marshall Bank, N.A.*, 453 F.3d 1073, 1076-77 (8th Cir. 2006) (holding that the illusory coverage doctrine did not apply where coverage was available for some but not all forgery claims); *W. Bend. Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 704-05 (Minn. 2009). Accordingly, the policy's coverage for defamation is not illusory.

Second, S&B and Sletten argue that the policy's coverage is illusory with respect to several other intentional torts that the policy lists as covered: battery, assault, and malicious prosecution. But even assuming that this assertion is true, it provides S&B and Sletten with no remedy here. The doctrine of illusory coverage "operates to qualify the general rule that courts will enforce an insurance contract as written." *Jostens, Inc.*, 527 N.W.2d at 118. Accordingly, under Minnesota law, illusory-coverage doctrine operates as a remedy where an insured seeks coverage under a provision that purports to provide coverage but such coverages turns out to be functionally nonexistent. *In re SRC Holding Corp.*, 545 F.3d at 671. S&B and Sletten do not seek coverage for these other torts, and so the doctrine of illusory coverage cannot provide them with a remedy in this case.

B.

Having concluded that the policy provides coverage for defamation generally but not defamation committed with the intent to injure, we next address the issue whether Continental has a duty to defend based on the allegations in St. Croix's complaint. An insurance provider's "duty to defend extends to every claim that arguably falls within the scope of coverage, and the duty to defend one claim creates a duty to defend all claims." *AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875, 880 (8th Cir. 2011) (alteration omitted) (internal quotation marks omitted) (quoting

*Wozniak Travel, Inc.*, 762 N.W.2d at 576). An insurer bears "the burden of demonstrating that *all parts* of the cause of action against the insured *fall clearly outside the scope of coverage*." *Id*. at 881 (quoting *Farmers & Merchs. State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.*, 242 N.W.2d 840, 843 (Minn. 1976)). To determine whether there is a duty to defend, "a court will compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy." *Meadowbrook, Inc.*, 559 N.W. 2d at 415 (emphasis omitted).

Here, each claim in the St. Croix lawsuit alleges that S&B and Brettin acted with the intent to injure Wolff and St. Croix Valley Dental. In *Callas Enterprises, Inc.*, we concluded that an insurance provider had no duty to defend a defamation claim where the underlying policy had a knowledge-of-falsity exclusion. 193 F.3d at 957. After reviewing the underlying complaint, we explained, "[i]t would defy logic to interpret this language as alleging anything other than that [the insured] acted falsely and with knowledge of that falsity." *Id.* at 957 n.5. Here as well, the St. Croix lawsuit clearly alleges that S&B and Brettin both acted with the intent to injure. Brettin allegedly used his neighbor's wireless network to post false and negative reviews of Wolff and St. Croix Valley Dental. As to S&B, the complaint specifically alleges that "Brettin was acting on behalf of and with the knowledge and consent of the other Defendants and for their benefit." S&B was one of the named "other Defendants" in the complaint. All three claims, defamation and libel, civil conspiracy, and unfair competition, arose out of the same alleged facts. And all three claims specifically alleged that the defendants acted with the intent to injure Wolff and St. Croix Valley Dental's reputation.

S&B and Sletten nonetheless argue that, because a Minnesota defamation claim does not require proof of intent to injure, *see Weinberger*, 668 N.W.2d at 667, Continental has a duty to defend. This argument misapprehends the distinction between an insurer's duty to indemnify and its duty to defend. Whether an insurer has a duty to defend is determined by looking to the allegations of the underlying

-10-

complaint, *Meadowbrook, Inc.*, 559 N.W. 2d at 415, not by considering hypothetical scenarios that could result in indemnity coverage, *Bethel v. Darwin Select Ins. Co.*, 735 F.3d 1035, 1040 (8th Cir. 2013). Here, the underlying complaint alleged that S&B and Brettin intended to injure. "We will not imagine allegations that [St. Croix] could have made merely because [St. Croix's] actual allegations went beyond the bare minimum of notice pleading." *See. id.*

Finally, S&B and Sletten argue that it was inappropriate for the district court to dismiss with prejudice because, regardless of whether Continental has a duty to defend, Continental may yet be required to indemnify S&B and Sletten after trial. S&B and Sletten argue that, for this reason, the district court should have dismissed their claims without prejudice. However, both S&B and Sletten's complaint and the district court's dismissal order addressed only whether there was a duty to defend against the pending St. Croix lawsuit. Because we agree with the district court that S&B and Sletten failed to state a claim that Continental breached its duty to defend, we discern no abuse of discretion in its dismissal with prejudice. *See Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 446 (8th Cir. 2014).

## III.

We affirm the district court's grant of Continental and Wells Fargo's motion to dismiss with prejudice.

_____